UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | Criminal No. |
| v. : | Magistrate No. 13-MJ-161 (Chao Jiang) |
| WANG HONGJUN : | Grand Jury Original |
| aka : | |
| Hongjun Wang, : | Charges: |
| : | 18 U.S.C. § 1349 (Conspiracy) |
| and : | 18 U.S.C. § 1348 (Securities Fraud) |
| : | 18 U.S.C. § 1001 (False Statements) |
| CHAO JIANG : | |
| aka : | 18 U.S.C. § 2 (Aiding and Abetting and |
| Jiang Chao, : | Causing an Act To Be Done) |
| Defendants. : | 18 U.S.C. § 981(a)(1)(C) and 28 |
| _____ : | U.S.C. § 2461(c) (Criminal Forfeiture) |

## INDICTMENT

The Grand Jury charges:

### GENERAL ALLEGATIONS

At various times relevant to this Indictment:

#### Relevant Persons and Entities

1. China North East Petroleum Holdings Limited ("CNEP" or the "Company") was a Nevada corporation purporting to be engaged in oil exploration, drilling and production in the People's Republic of China ("China"). It was formed in 2004 through a reverse merger with a U.S. company that had limited actual operations or physical assets. Its common stock was

1

registered with the United States Securities and Exchange Commission ("SEC") pursuant to Section 12 of the Exchange Act.

2. Defendant WANG HONGJUN, a/k/a HONGJUN WANG ("WANG"), was a Chinese citizen residing part-time in California. From in or around January 2009 to in or around May 2010, WANG served as the President and Chief Executive Officer of CNEP and the Chairman of the Board of Directors at CNEP. Beginning in or around May 2010, WANG served as a director of CNEP. WANG was the largest shareholder of CNEP common stock.

3. Defendant CHAO JIANG, a/k/a JIANG CHAO ("CHAO"), was a Chinese citizen residing in New York and New Jersey. From in or around 2008 to in or around 2011, CHAO served as Vice President of Corporate Finance and Corporate Secretary of CNEP. In that role, CHAO had signatory authority over CNEP's corporate bank accounts. In addition, CHAO participated in the drafting of CNEP press releases and filings with the SEC.

4. "Executive" was a Chinese citizen and one of the founders of CNEP. From in or around November 2009 until in or around May 2010, Executive served as a director of CNEP. Executive was the mother of WANG.

5. "Relative C" was a Chinese citizen and the father of CHAO. Relative C held no position with CNEP.

6. "Relative W" was a Chinese citizen and the wife of WANG. Beginning in or around November 2010, Relative W was a cashier at CNEP.

7. The SEC was an independent agency of the United States responsible for enforcing federal securities laws, which are designed to provide the investing public with full disclosure of all material facts regarding matters involving the offer, purchase, and sale of securities. These laws protect the investing public in the purchase of stock that is publicly

distributed by maintaining fair and honest security markets through a full and accurate disclosure of the risks and business operations of a company's issuing securities.

## The Scheme to Defraud

### The Public Offerings

8. On or about June 29, 2009, CNEP filed a shelf registration statement on Form S-3 with the SEC in the District of Columbia, seeking to register the issuance of up to $40 million in CNEP securities for sale to the public. In that document, and in subsequent amendments, CNEP stated that the proceeds from any securities offerings pursuant to the shelf registration would be used "for general corporate purposes, which may include working capital, capital expenditures, acquisitions of new technologies or businesses, and investments." The shelf registration became effective on or about September 9, 2009.

9. On or about September 16, 2009, CNEP filed a prospectus supplement with the SEC in the District of Columbia, to offer 4 million shares of its common stock for sale to the public for total proceeds of approximately $18.4 million. In the section entitled "Use of Proceeds," CNEP stated that it intended to use "the net proceeds from the sale of the securities offered by this prospectus supplement for general corporate purposes, which may include working capital, capital expenditures, acquisitions of new technologies or businesses, and investments."

10. On or about September 16, 2009, CNEP filed a Current Report on form 8-K with the SEC in the District of Columbia (the "September 8-K"), in which CNEP announced the public offering of CNEP stock. The September 8-K included a copy of a press release issued by CNEP related to the offering, which listed CHAO as the CNEP contact person in the United

States for the offering. The press release stated that CNEP would "use the net proceeds from the offering to fund its future business expansion plan, and for general working capital purposes."

11. Pursuant to the September 2009 offering, CNEP raised approximately $18.4 million from investment funds.

12. On or about December 15, 2009, CNEP filed a prospectus supplement with the SEC in the District of Columbia, which stated that it anticipated offering another roughly 1.96 million shares and that, after expenses, CNEP expected the offering to generate proceeds of approximately $12.59 million. In the section entitled "Use of Proceeds," CNEP informed investors it intended to use "the net proceeds from the sale of the securities offered by this prospectus supplement for repayment of our debt and general corporate purposes, which may include working capital, capital expenditures, acquisitions of new technologies or businesses, and investments."

13. On or about December 15, 2009, CNEP filed a Current Report on form 8-K with the SEC in the District of Columbia (the "December 8-K"), in which CNEP announced the second public offering of CNEP stock. The December 8-K included a copy of a press release issued by CNEP related to the offering, which listed CHAO as the CNEP contact person in the United States for the offering. The press release stated that CNEP would "use the net proceeds from the offering to redeem its 8% Senior Debenture issued to Lotusbox Investments, LTD on February 28, 2008 and for general working capital purposes."

14. Pursuant to the December 2009 offering, CNEP raised approximately $13.5 million from investment funds.

15. In connection with the September 2009 and December 2009 public offerings by CNEP (collectively, the "Public Offerings"), CHAO met with investment bankers to raise capital and made presentations to potential investors on behalf of CNEP at investor conferences.

16. The proceeds of the Public Offerings were deposited into a bank account at Bank of America in New York in the name of CNEP. CNEP's bank account at Bank of America was controlled by CHAO and WANG who were the sole signatories on the account.

The Misappropriation of Proceeds

17. Contrary to the representations made in connection with the Public Offerings, on or about the dates below, CHAO and WANG authorized three transfers of the proceeds, totaling approximately $966,412, from CNEP's Bank of America account to an account in the name of Relative C:

| Date (On or About) | Amount | Description of Transfer |
| --- | --- | --- |
| September 23, 2009 | $ 56,412.08 | Wire transfer from CNEP's bank account at Bank of America to Relative C's bank account at Bank of America. |
| November 3, 2009 | $500,000 | Wire transfer from CNEP's bank account at Bank of America to Relative C's bank account at Bank of America. |
| December 16, 2009 | $410,000 | Wire transfer from CNEP's bank account at Bank of America to Relative C's bank account at Bank of America. |

18. On or about November 20, 2009, Relative C caused $300,000 to be transferred to the bank account of CHAO.

19. On or about November 23, 2009, CHAO caused $300,000 to be transferred to the bank account of CNEP.

20. On or about February 10, 2010, Relative C caused $300,000 to be transferred to the bank account of CNEP.

21. In addition, on or about November 19, 2009, CHAO and WANG transferred approximately $300,000 of the proceeds from the Public Offerings from CNEP's bank account at Bank of America in New York to Relative W's bank account at Bank of the West in California, who used the funds to purchase a home in California and to purchase jewelry and a Mercedes-Benz. As the defendants well knew, none of these transactions were consistent with the representations made in connection with the Public Offerings or subsequently disclosed in regulatory filings with the SEC.

## The SEC Investigation and CHAO's Cover-Up

22. On or about August 16, 2010, the SEC issued a formal order of investigation, authorizing the investigation of, among other things, CNEP's use of the proceeds from the Public Offerings.

23. During the investigation, the SEC issued a subpoena to CHAO requiring him to testify, under oath, at the SEC's headquarters in the District of Columbia.

24. On or about August 5, 2011, CHAO, accompanied by counsel, appeared at the SEC's headquarters in the District of Columbia. The SEC advised CHAO that there were potential criminal penalties for knowingly providing false documents, testimony, and information to the SEC. CHAO was placed under oath. To conceal the scheme to defraud CNEP investors, CHAO testified falsely under oath to the SEC. In the sworn testimony, CHAO falsely testified that none of his family members had received anything of value greater than $500 at any time from CNEP. In fact, however, as described above and as CHAO well knew, he transferred roughly $966,412 to the bank account of Relative C.

25. CHAO also testified falsely to the SEC that the proceeds from the Public Offerings were used for capital working expenditures and to pay back a particular debt. In fact, however, as described above and as CHAO well knew, a portion of the proceeds was diverted to Relative C and Relative W for their own personal use.

## COUNT ONE
### Conspiracy
### (18 U.S.C. § 1349)

26. Paragraphs 1 through 25 of this Indictment are realleged and incorporated by reference as if fully set forth herein.

### The Conspiracy

27. From in or about 2009 through in or about 2011, in the District of Columbia and elsewhere, the defendants, CHAO JIANG and WANG HONGJUN, did knowingly and intentionally combine, conspire, confederate, and agree with others known and unknown to the Grand Jury to commit certain offenses against the United States, namely:

   a. wire fraud, that is, to unlawfully, willfully, and knowingly devise and intend to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, to knowingly transmit and cause to be transmitted, by means of wire, radio, and television communication in interstate commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, in violation of Title 18, United States Code, Section 1343; and

   b. securities fraud, that is, to knowingly and intentionally execute a scheme and artifice (1) to defraud any person in connection with any security of CNEP, an issuer with a class of securities registered under § 12 of the Securities Exchange Act of 1934 (Title 15, United States Code, Section 78l), and (2) to obtain, by means of materially false and fraudulent

7

pretenses, representations, and promises, any money and property in connection with any security of CNEP, an issuer with a class of securities registered under § 12 of the Securities Exchange Act of 1934 (Title 15, United States Code, Section 78l), in violation of Title 18, United States Code, Section 1348.

Manner and Means of the Conspiracy

28. Among the manner and means by which CHAO, WANG, and others known and unknown to the Grand Jury would and did carry out the conspiracy included, but were not limited to, the following:

    a. CHAO, WANG, and their co-conspirators informed investors, through disclosure statements, press releases, and other communications, that CNEP was conducting the Public Offerings for the purpose of raising cash to be used for business purposes.

    b. CHAO, WANG, and their co-conspirators caused investors to transfer funds to CNEP's bank account at Bank of America in New York in connection with the Public Offerings.

    c. CHAO, WANG, and their co-conspirators caused portions of the proceeds of the Public Offerings to be wire transferred from CNEP's bank account at Bank of America in New York to personal bank accounts of the co-conspirators' relatives, including Relative C's bank account at Bank of America and Relative W's bank account at Bank of the West in California.

    d. CHAO, WANG, and their co-conspirators attempted to conceal the transfers by failing to report the transfers to CNEP's audit committee and by testifying falsely about the transfers to the SEC.

e. CHAO, WANG, and their co-conspirators engaged in various other related-party transactions both in the United States and in China in or around 2009 and 2010 without disclosing the transactions to CNEP's board of directors and audit committee and without disclosing them to the investing public leading up to the Public Offerings. These transactions, which included transferring CNEP money into and out of WANG's and the Executive's personal bank accounts, were designed, at least in part, to misstate CNEP's books and records and conceal the fact that CNEP money was being diverted to the co-conspirators and their relatives.

(Conspiracy to Commit Securities Fraud and Wire Fraud, in violation of Title 18, United States Code, Section 1349.)

COUNTS TWO THROUGH FIVE
Securities Fraud
(18 U.S.C. § 1348)

29. Paragraphs 1 through 25 and Paragraphs 27 through 28 of this Indictment, including Paragraphs 8 through 25 describing the scheme to defraud, are realleged and incorporated by reference as if fully set forth herein.

30. On or about the dates set forth below, in the District of Columbia and elsewhere, the defendants, CHAO JIANG and WANG HONGJUN, knowingly and intentionally executed a scheme and artifice (a) to defraud any person in connection with any security of CNEP, an issuer with a class of securities registered under § 12 of the Securities Exchange Act of 1934 (Title 15, United States Code, Section 78l), and (b) to obtain, by means of materially false and fraudulent pretenses, representations, and promises, any money and property in connection with any security of CNEP, an issuer with a class of securities registered under § 12 of the Securities Exchange Act of 1934 (Title 15, United States Code, Section 78l), as described below:

| Count | Date (On or About) | Description |
|---|---|---|
| 2 | September 16, 2009 | Prospectus supplement filed electronically by CNEP with the SEC in the District of Columbia. |
| 3 | September 16, 2009 | Form 8-K current report filed electronically by CNEP with the SEC in the District of Columbia. |
| 4 | December 15, 2009 | Prospectus supplement filed electronically by CNEP with the SEC in the District of Columbia. |
| 5 | December 15, 2009 | Form 8-K current report filed electronically by CNEP with the SEC in the District of Columbia. |

(Securities Fraud, in violation of Title 18, United States Code, Sections 1348 and 2.)

COUNT SIX
False Statements
(18 U.S.C. § 1001)

31. Paragraphs 1 through 25 and Paragraphs 27 through 28 of this Indictment are realleged and incorporated by reference as if fully set forth herein.

32. On or about August 5, 2011, in the District of Columbia, defendant CHAO JIANG, in a matter within the jurisdiction of a department and agency of the United States, to wit, the United States Securities and Exchange Commission, did knowingly and willfully falsify, conceal and cover up by trick, scheme, and device a material fact and made materially false, fictitious, and fraudulent statements and representations, by falsely testifying to the SEC that, among other materially false and misleading statements, no members of his family had received anything of value greater than $500 from CNEP, when in truth and in fact, as he then and there well knew, over approximately $966,412 in proceeds from the Public Offerings described above

was transferred from the CNEP bank account to an account in the name of CHAO's father, Relative C.

(False Statements, in violation of Title 18, United States Code, Sections 1001 and 2.)

## COUNT SEVEN
## False Statements
## (18 U.S.C. § 1001)

33. Paragraphs 1 through 25 and Paragraphs 27 through 28 of this Indictment are realleged and incorporated by reference as if fully set forth herein.

34. On or about August 5, 2011, in the District of Columbia, defendant CHAO JIANG, in a matter within the jurisdiction of a department and agency of the United States, to wit, the United States Securities and Exchange Commission, did knowingly and willfully falsify, conceal and cover up by trick, scheme, and device a material fact and made materially false, fictitious, and fraudulent statements and representations, by falsely testifying to the SEC that, among other materially false and misleading statements, the proceeds from the Public Offerings were used to pay professionals, were transferred to Harmony Capital to pay off a debt, and were otherwise transferred to China for working capital, when in truth and in fact, as he then and there well knew, over approximately $1,266,412 was used for other purposes, to wit, approximately $966,412 in proceeds from the Public Offerings described above was transferred from the CNEP bank account to an account in the name of CHAO's father, Relative C, and over approximately $300,000 in proceeds from the Public Offerings described above was transferred from the CNEP bank account to an account in the name of WANG's wife, Relative W.

(False Statements, in violation of Title 18, United States Code, Sections 1001 and 2.)

## CRIMINAL FORFEITURE ALLEGATION

35. Upon conviction of the offenses alleged in Count One through Count Five, the defendants, CHAO JIANG and WANG HONGJUN, shall forfeit to the United States any property, real or personal, which constitutes or is derived from proceeds traceable to the offenses, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c). The United States will also seek a forfeiture money judgment against the defendant in the amount of at least $1,266,412.08.

36. If any of the property described above as being subject to forfeiture, as a result of the any act or omission of the defendants:

    a. cannot be located upon the exercise of due diligence:

    b. has been transferred or sold to, or deposited with, a third person;

    c. has been placed beyond the jurisdiction of the Court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property that cannot be subdivided without difficulty

the defendants shall forfeit to the United States any other property of the defendants, up to the value of the property described above, pursuant to Title 21, United States Code, Section 853(p).

(Criminal Forfeiture, in violation of Title 28, United States Code, Section 2461(c) and Title 18, United States Code, Section 981(a)(1)(C).)

A True Bill:

_____
FOREPERSON

_____   _____
Attorney for the United States       Fraud Section
in and for the District of Columbia  Criminal Division
                                      United States Department of Justice

13